**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| JAMES MACK, Individually, and as Surviving Parent and Personal Representative of the Estate of Crystal Ann Mack, | * |
| | * |
| and | *   Civil Action No. RBD 08-688 |
| SYLVIA MACK | * |
| Plaintiffs, | * |
| v. | * |
| AMERISOURCEBERGEN DRUG CORPORATION, d/b/a/ Amerisource Bergen, et al. | * |
| | * |
| Defendants. | * |

_____

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, James Mack, Individually, as a Surviving Parent and the Personal Representative of the Estate of Crystal Mack and Sylvia Mack, Individually, as a Surviving Parent Oppose the Motion For Summary filed by the Defendants, Centocor, Inc., Johnsons & Johnson, and Amerisourcebergen Drug Company d/b/a/ Amerisource Bergen on the following grounds:

1.  James and Sylvia Mack brought the following action for the death of their 26 year old daughter which resulted in Crystal Mack experiencing a deadly arrhythmia to a reasonable degree of medical certainty which was caused or contributed to by infliximab manufactured, marketed, and distributed by these defendants under the trade name

Remicade® ( "herein after as "Remicade").  This drug was associated with unexplained death in the animal studies, cardiac arrhythmias reported in the pre-marketing clinical studies, cardiac arrhythmias reported in a post-marketing study, post-marketing adverse events due to cardiac arrhythmias reported to the FDA, manufacturer labeling warning stating that cardiac arrhythmia was associated with the therapy, reports in peer-reviewed journals of reports of death and serious adverse reactions related to arrhythmias, internal communications and meeting related to cardiac arrhythmias, and a FDA report discussing the "Serious Adverse Events Associated with the use of the Anti-TNF alpha Drugs," such as Remicade.

2.    Remicade is a highly toxic drug that has been the subject of numerous black drugs warning by the Federal Drug Administration ("FDA"), which is the strongest warring issued by the agency. The drug was studied for treatment of congestive heart failure and the studies were halted due to the unexplained deaths of participants. As a result of the study, Defendant Centocor and Johnson & Johnson issued a "Dear Doctor" letter warning healthcare providers of cardiac risks associated with Remicade ®.

3.    Plaintiffs during discovery have proven more likely than not and to a reasonable degree of medical certainty that Remicade® caused or contributed to the sudden cardiac arrhythmia suffered by Crystal Mack, therefore the Defendants are "strictly liable" for the death of Crystal Mack as the manufacturer, distributor and marketer of Remicade. Furthermore, Plaintiffs have alleged and proven that the defendants engaged in a common scheme or purpose of having patients "demand Remicade" despite safety concerns associated with it by direct marketing to increase profits and market share.

4.    Plaintiffs have proven by qualified medical experts the clinical facts and

circumstances regarding Crystal Mack's death that Remicade "caused or contributed" to her death and that each defendants acts and omissions in a common design or scheme were a cause in fact of her death.

5. Plaintiffs have proven that the defendants breached their expressed and implied warranties and contract, misrepresented intentionally and as a defect in marketing, violated the "customers expectation" as to the drug, engaged in civil and criminal conspiracy and violated Maryland statutes which resulted to the personal injury and economic injury suffered by Crystal Mack, James Mack, and Sylvia Mack.

6. Plaintiffs have proven that Amerisourcebergen was not registered to distribute Remicade to Crystal Mack as required by Maryland Law. This is a criminal offense. Further Centocor and Johnson & Johnson were not licensed to do business as required by Maryland Law. The distribution and infusions of Remicade in Crystal Mack, who was a Medicaid patient, was a violation of Maryland law, therefore, the receipts of her insurance benefits was a violation of her contract expressed or implied with the defendants.

7. Plaintiffs have proven misrepresentation and fraud against the defendants, and each of the defendants by engaging in acts and omissions and civil and criminal conspiracy as shown by the following: (1) Amerisourcebergen Drug Corporation's subsidiary, the Lash Group on behalf and in acting with the other defendants as "Accessone" processed the approval of the benefits form for Crystal Mack to receive Remicade without the required medical information (2) represented through the testimonial video "On My Own Terms" and brochure to Crystal Mack that Remicade could cure Crohn's flare-ups without presenting information where patients did not have successful outcomes, (3) by

forming and controlling infusions centers such as the Serpick Infusion Center at St. Joseph Hospital where Crystal Mack received treatment and through acts and omissions arranging for sales persons without medical education or training to provide in-service training to nurses who infused Crystal Mack and failing to inform the health care professionals of the adverse events associated with Remicade that were warning signs that Mack was experiencing cardiac complications. Further for not insuring that these infusions center were properly equipped for detecting signs of arrhythmia which it had knowledge had been experienced by patients in the clinical trials as the defendants realized that an action could not be brought in many courts based on the learned intermediary doctrine, (4) creating shell companies whose servants, agents, and employees mislead Crystal Mack that she was required to sign a contract with the Lash Group to receive Remicade treatment, (5) creating "Accessone" to market Remicade for the defendants while appearing to customers such as Crystal Mack that the company was reminding the patient of appointments and providing product information while Centocor and Johnson & Johnson developed market strategies through this entity to increase market share and profits, (6) making agreements expressed or implied where Amerisourbergen supplied Remicade without the necessary licensure knowing that it was a violation of Maryland laws as this defendant has been previously licensed (7) Centocor Inc., and Johnson & Johnson doing business in the State of Maryland without the required licensure (8) engaging in a marketing defect in the sales of Remicade by a direct campaign to customers and pervasive marketing campaign and tactics that caused patients to "Ask for Remicade" when their clinical condition did not necessitate a drug that was labeled by the Federal Drug Administration when conventional therapy had

failed and engaging in other acts and misrepresentations as further discussed in the memorandum of law. These activities were a cause in fact of the economic and physical injury to Crystal Mack.

8. Defendants and each of them are strictly liable under the products liability law of Maryland, specifically the governing principle of the "customer expectation test", and not the risks benefits test as the Defendants suggest. Defendants are strictly liable because the consumer, under the applicable test, did not expect the drug to cause deadly arrhythmias.

9. Defendants and each of them are liable for violation of contract based on general principles of contract law and civil and criminal conspiracy as they through their agents, servants, and employees caused Crystal Mack to enter into a contract with the Lash Group Inc., who appeared as a consultant for the patient when in fact it was paid by the defendants through the cost of the product to insure that patients remain on maintenance therapy, allowing their insurance benefits to pay for a drug that increased the market share and profits for each of them. The contract was breached as the defendants were in violation of state laws by receipt of Crystal Mack's private and governmental benefits including Medicaid.

10. Defendants and each of them through acts and omissions and civil conspiracy expressed though their promotional materials, sales and marketing representatives, and customer calls centers that Remicade was a safe and effective drug when it had knowledge that the drug had numerous black box warnings and patients had experienced adverse cardiac events. Defendants warranted the drug as safe and effective in the promotional materials and in service training of health professionals. In direct reliance on

these warranties expressed and implied Crystal Mack requested Remicade , and continued the maintenance therapy that was the cause in fact of her economic and physical injury.

11. Defendants were negligent in that they breached their duty of care to the patients as customers by fraudulently and deceitfully manufacturing, marketing, and distributing Remicade.

12.   This action was removed to federal court based on diversity of citizenship only and Plaintiffs have proven their claims under applicable Maryland substantive law, general causation under Daubert and applicable standards, and specific causation based on Plaintiffs' experts scientifically reliable differential medical diagnosis.

   WHEREFORE, for the reasons stated above, and as more fully set forth in the attached memorandum of law, Plaintiffs request that this Honorable Court deny the Motion For Summary Judgment as to each defendants.

By: _____/s/_____
   Donald R. Huskey  Bar No. 22981
   Laws Offices of Donald R. Huskey LLC
   1023 North Calvert Street
   3rd Floor
   Baltimore, Maryland 21202
   Tel: 410 347-7979
   _____/s/_____
   Governor E. Jackson, III, Bar No. 27673
   Law Office of Governor E. Jackson, III, LLC
   1023 North Calvert Street 4th Floor
   Baltimore, Maryland 21202
   Tel: 410 528-5150

   *Attorneys for Plaintiffs*